## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PETER TARBOX and                    :
ANNETTE WILLIAMS,                   :
                                    :
          Plaintiff,                :
                                    :
     v.                             :     3:14-CV-01346
                                    :     (JUDGE MARIANI)
BUTLER TOWNSHIP and                 :
OFFICER SHAWN M. BUTLER, in his     :
official and individual capacities, :
                                    :
          Defendant.                :

## MEMORANDUM OPINION

### I.   Introduction

Presently before the Court is a Motion to Dismiss Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) (Doc. 13). For the reasons that follow, the Court will grant the Motion in part and deny it in part.

### II.   Factual Allegations and Procedural History

Plaintiffs' Amended Complaint alleges the following well-pleaded facts, which the Court accepts as true for purposes of Defendants' Motion to Dismiss.

Plaintiff Peter Tarbox and nonparty Laura Long are the biological parents of an 11-year daughter, named A.L. (Am. Compl., Doc. 11, at ¶¶ 11-12.) Tarbox resides in Norwood, New York with his mother, Plaintiff Annette Williams. (*Id.* at ¶¶ 1-3.) Long is Tarbox's apparently estranged wife, who lives in Butler, Pennsylvania with A.L. (*See id.* at ¶¶ 13-14.)

"At all relevant times, Mr. Tarbox was in possession of the results of a paternity test that confirmed he was the biological father of [A.L.], and at all relevant times Mr. Tarbox was paying child support to Ms. Long." (*Id.* at ¶ 15.) Moreover, "[a]t all relevant times, [A.L.] was never the subject of a custody order." (*Id.* at ¶ 16.)

"In or around August 2013, Mr. Tarbox began having concerns over [A.L.'s] welfare." (*Id.* at ¶ 17.) This arose from a phone call he received "[o]n or about August 15, 2013 . . . from the step-parents of Ms. Long's boyfriend," who "informed Mr. Tarbox that they suspected [A.L.] was being abused. Mr. Tarbox knew that the boyfriend, John McCabe, has served jail time in the past." (*Id.* at ¶ 18.) After receiving this call, Tarbox and Williams departed from their home in New York and headed to Long's apartment, arriving at approximately 3:00 p.m. (*Id.* at ¶¶ 19-20.) Tarbox did not enter the apartment, but rather met A.L. at the door and "told her that she could go back to New York with him if she so desired. Ms. Long was nowhere to be found." (*Id.* at ¶¶ 21-22.) A.L. "stated that she did want to go to New York with her father and grandmother," and thus the three of them "departed Butler Township for Mr. Tarbox's home in Norwood, New York. Ms. Long was nowhere to be seen and did not respond to calls advising her that [A.L.] was with Mr. Tarbox." (*Id.* at ¶ 23.)

"Finally, at approximately 6:00 p.m. on August 15, 2013, Ms. Long called Mr. Tarbox and stated that if he did not return [A.L.] within the next 10 minutes, she was going to call the police." (*Id.* at ¶ 24.) "Mr. Tarbox refused to return [A.L.] because there was no custody

order requiring him to do so; because [A.L.] wanted to go to New York with him; and because Mr. Tarbox had received phone calls indicating [A.L.] had been abused." (*Id.* at ¶ 25.) Upon hearing this, Long is believed to have called the Butler Township Police Department ("BTPD"), "spoke to Officer [Shawn] Butler, and reported that [A.L.] had been taken and/or kidnapped by her father and grandmother." (*Id.* at ¶ 27.) During this conversation, "Officer Butler either failed to inquire whether there was a custody order in place for [A.L.] or blatantly ignored the fact that there was no such custody order in place. It is also believed that Officer Butler failed to request proof of the existence of such a custody order." (*Id.* at ¶ 28.) Officer Butler also "blatantly ignored the fact that the person who was alleged to have 'kidnapped' [A.L.] was her biological father." (*Id.* at ¶ 29.)

"Officer Butler and the BTPD subsequently issued an Amber Alert naming Mr. Tarbox as the abductor and sought a fugitive warrant for his arrest." (*Id.* at ¶ 30.) "The Amber Alert was broadcast over the local news." (*Id.* at ¶ 31.) Plaintiffs believe that "Officer Butler intentionally included in the application for a fugitive warrant false, misleading and/or incomplete information." (*Id.* at ¶ 30.)

"Mr. Tarbox and Ms. Williams were subsequently arrested near Watertown, New York pursuant to the fugitive warrant on the evening of August 15, 2013." (*Id.* at ¶ 32.) "The New York police spoke to Mr. Tarbox for less than 5 minutes, and Ms. Williams was interrogated without being advised of her Miranda Rights." (*Id.* at ¶ 33.) During this encounter, Tarbox showed the police his paternity test and informed them that a custody

3

order was not in place, that A.L. wanted to go to New York with him and that he believed

that A.L. was being abused while under her mother's care. (*Id.* at ¶ 34.) "Despite this, Mr.

Tarbox and Ms. Williams were incarcerated at the Saint Lawrence County Correctional

Facility in New York." (*Id.* at ¶ 35.)

> Upon information and belief, the police in New York faxed the documentation
> related to Mr. Tarbox's paternity and his support obligations to Officer Butler
> and the BTPD and informed them of the foregoing information received from
> Mr. Tarbox, but Officer Butler and the BTPD ignored this information and did
> absolutely nothing.

(*Id.* at ¶ 36.) Tarbox and Williams remained at the St. Lawrence Correctional Facility for

over one month without being charged with any crime, even though Officer Butler and the

BTPD possessed the exculpatory information discussed above. (*Id.* at ¶ 37.) During this

time, "Officer Butler and the BTPD did nothing to investigate the situation further by, for

example, talking to [A.L.] and/or requesting a copy of any custody order related to her." (*Id.*)

"On or about September 19, 2013, Mr. Tarbox and Ms. Williams were extradited to

Schuylkill County and imprisoned in the Schuylkill County Prison at the behest of Officer

Butler and the BTPD." (*Id.* at ¶ 38.) They were formally arraigned that same day. (*Id.* at ¶

39.) Officer Butler and the BTPD charged Tarbox with kidnapping for ransom, endangering

the welfare of a child, and interference with the custody of children, (*id.* at ¶ 40), and

charged Williams with conspiracy to commit those same crimes, (*id.* at ¶ 42). "Neither Mr.

Tarbox nor Ms. Williams could post bail, which was set at $500,000.00 straight cash bail, so

4

they were remanded for incarceration at the Schuylkill County Prison in Pottsville, Schuylkill County, Pennsylvania." (*Id.* at ¶ 44.)

A first preliminary hearing was scheduled for September 27, 2013, at which time Ms. Williams's court-appointed attorney showed Officer Butler and the BTPD some of the above exculpatory evidence. (*Id.* at ¶ 46.) That hearing was rescheduled and the two defendants were remanded to the Schuylkill County Prison. (*Id.*) "A second preliminary hearing, scheduled for October 2, 2013 was also postponed, resulting in the continued incarceration of Mr. Tarbox and Ms. Williams in Schuylkill County Prison." (*Id.* at ¶ 47.) The same postponement occurred at the third preliminary hearing, originally scheduled for November 6, 2013. (*Id.* at ¶ 48.) Upon information and belief, Laura Long was not subpoenaed for any of these hearings "despite being a crucial witness." (*Id.* at ¶¶ 46-48.)

"On November 20, 2013, Mr. Tarbox and Ms. Williams were finally afforded a preliminary hearing." (*Id.* at ¶ 49.) Ms. Long failed to appear at the hearing and, again, is not believed to have even been subpoenaed. (*Id.* at ¶ 50.) All charges against Mr. Tarbox and Ms. Williams were then dropped and the two were released from prison. (*Id.* at ¶ 51.)

"While incarcerated, Mr. Tarbox lost his job and Ms. Williams was deprived of her Social Security income." (*Id.* at ¶ 52.)

Tarbox and Williams initiated this lawsuit on July 14, 2014. Their Amended Complaint alleges the following causes of action against Officer Butler under both federal and state law: False Arrest/False Imprisonment (Count I), Malicious Prosecution (Count II),

5

Malicious Abuse of Process (Count III), and Violation of Due Process (Count IV). It also alleges a state-law claim against Officer Butler for Intentional Infliction of Emotional Distress (Count V). Finally, it alleges a claim styled "Municipal Liability" against Butler Township (Count VI).

Defendants moved to dismiss the Amended Complaint in its entirety, arguing that each Count fails to state a claim under Rule 12(b)(6), that the Defendants are entitled to various levels of immunity, and that the Plaintiffs are not entitled to punitive damages. (*See* Mot. to Dismiss, Doc. 13, at ¶¶ 5-14.) It is to these issues that the Court now turns.

### III.   Standard of Review

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations and alterations omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above

6

the speculative level." *Id.* A court "take[s] as true all the factual allegations in the Complaint

and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal

conclusions and threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231

n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a court] to take the following three steps to
> determine the sufficiency of a complaint: First, the court must take note of the
> elements a plaintiff must plead to state a claim. Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth. Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not show[n]—that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (internal citations and

quotation marks omitted). This "plausibility" determination will be a "context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV.   Analysis

### a.   False Arrest/False Imprisonment (Count I)

Many of Plaintiffs' claims are asserted under 42 U.S.C. § 1983. "To recover under 42

U.S.C. § 1983, [the Plaintiff] must establish that a state actor engaged in conduct that

deprived him of 'rights, privileges, or immunities' secured by the constitution or laws of the

United States." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000).

A section 1983 claim may lie for false arrest or false imprisonment[1] "based on the

Fourteenth Amendment protection against deprivations of liberty without due process of

law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). This means that

Plaintiffs must show a seizure without probable cause in violation of the Fourth Amendment.

*See, e.g., Orsatti v. New Jersey State Police*, 71 F.3d 480, 482-83 (3d Cir. 1995). "[W]here

the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for

false imprisonment [and, by extension, false arrest] based on a detention pursuant to that

arrest." *Groman*, 47 F.3d at 636.

> The principles surrounding probable cause are well-established:
>
> Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt. *See United States v. Glasser*, 750 F.2d 1197, 1205 (3d Cir.1984). Rather, probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990) (citing *Dunaway v. New York*, 442 U.S. 200, 208 n.9, 99 S. Ct. 2248, 2254 n.9, 60 L. Ed. 2d 824 (1979)).

*Orsatti*, 71 F.3d at 482-83. Moreover, "[t]he proper inquiry in a section 1983 claim based on

false arrest . . . is not whether the person arrested in fact committed the offense but whether

the arresting officers had probable cause to believe the person arrested had committed the

---

[1] "False arrest and false imprisonment are essentially the same claim." *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 593 (M.D. Pa. 2008) (quoting *Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999)).

8

offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). "Whether

probable cause exists depends upon the reasonable conclusion to be drawn from the

facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543

U.S. 146, 152, 125 S. Ct. 588, 593, 160 L. Ed. 2d 537 (2004). In reaching this

conclusion, the arresting officer's state of mind is irrelevant; all the factfinder must ask is

whether the facts available to the arresting officer objectively gave rise to a finding of

probable cause at the time the arrest was made. *Whren v. United States*, 517 U.S. 806,

812-13, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996) (summarizing case law and

concluding that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth

Amendment analysis").

However, "[a]n officer contemplating an arrest is not free to disregard plainly

exculpatory evidence, even if substantial inculpatory evidence (standing by itself)

suggests that probable cause exists." *Wilson*, 212 F.3d at 790 (quoting *Kuehl v. Burtis*,

173 F.3d 646, 650 (8th Cir. 1999)). Nor does

> an arrest warrant issued by a magistrate or judge . . . , in itself, shelter an
> officer from liability for false arrest. *See Sherwood v. Mulvihill*, 113 F.3d 396,
> 399 (3d Cir. 1997). Rather, a plaintiff may succeed in a § 1983 action for false
> arrest made pursuant to a warrant if the plaintiff shows, by a preponderance
> of the evidence: (1) that the police officer "knowingly and deliberately, or with
> a reckless disregard for the truth, made false statements or omissions that
> create a falsehood in applying for a warrant;" and (2) that "such statements or
> omissions are material, or necessary, to the finding of probable cause." *Id.*

9

*Id.* at 786-87.[2]

The existence of probable cause is typically a question of fact best left for the jury.

*See Montgomery*, 159 F.3d at 124. As such, the Court is not prepared to find that the facts

in Plaintiff's Amended Complaint depart from the typical case and fail to allege a lack of

probable cause. The Pennsylvania kidnapping statute provides:

> A person is guilty of kidnapping of a minor if he unlawfully removes a person under 18 years of age a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines a person under 18 years of age for a substantial period in a place of isolation, with any of the following intentions:
> (1) To hold for ransom or reward, or as a shield or hostage.
> (2) To facilitate commission of any felony or flight thereafter.
> (3) To inflict bodily injury on or to terrorize the victim or another.
> (4) To interfere with the performance by public officials of any governmental or political function.

18 Pa. Cons. Stat. Ann. § 2901(a.1).

> A removal or confinement is unlawful within the meaning of subsection (a.1) if it is accomplished by force, threat or deception, or, in the case of a person under 14 years of age, if it is accomplished without consent of a parent, guardian or other person responsible for general supervision of his welfare.

*Id.* at § 2901(b)(2).

---

[2] The requirements under Pennsylvania law related to false arrest and false imprisonment are substantially the same. There, Plaintiffs must show "(1) the detention of another person, and (2) the unlawfulness of such detention." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). These cases generally "turn on the existence or nonexistence of probable cause." *Kokinda*, 557 F. Supp. 2d at 593. And under Pennsylvania law, "[p]robable cause exists when 'the facts and circumstances which are within the knowledge of the police officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.'" *Renk*, 641 A.2d at 293 (quoting *Commonwealth v. Rodriguez*, 585 A.2d 988, 990 (Pa. 1991)).

As this statute makes clear, merely transporting a minor from one place to another does not constitute kidnapping; the act of removal must also be "unlawful" and done with the requisite intention. But Plaintiffs' Complaint alleges that Long merely asserted to Officer Butler that A.L. had been kidnapped, without providing details indicating that her taking was unlawful. (Am. Compl. at ¶ 27.) It further alleges that Officer Butler failed to inquire further as to whether the act that was being reported to him fit the legal definition of kidnapping and/or ignored facts that could call the "kidnapping" into question. (*Id.* at ¶¶ 28-29.) Had he inquired further, he could have discovered that, *inter alia*, the alleged kidnappers were A.L.'s father and grandmother, that no custody order was in place, and that Tarbox remained married to Long—all of which may have indicated that the issue being reported was more a dispute between estranged spouses than a kidnapping.

If this is true—as we must assume for purposes of resolving the Motion to Dismiss—then it may well be that Butler made his statements procuring the warrant "with a reckless disregard for the truth" and that his "false statements or omissions . . . create[d] a falsehood." Indeed, the Supreme Court has held in analogous cases that even a "sworn statement of an affiant that 'he has cause to suspect and does believe that' [illegal activity is taking place]" does not justify the issuance of a warrant. *Illinois v. Gates*, 462 U.S. 213, 239, 103 S. Ct. 2317, 2333, 76 L. Ed. 2d 527 (1983) (quoting *Nathanson v. United States*, 290 U.S. 41, 44, 54 S. Ct. 11, 12, 78 L. Ed. 159 (1933)). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action

11

cannot be a mere ratification of the bare conclusions of others." *Id.* In light of these

principles, the allegations that Butler uncritically accepted Long's bare conclusions and

passed them off to the magistrate as probable cause to procure a warrant, without doing

any independent investigation himself, evidence a reckless disregard for the real existence

of probable cause. And these actions are obviously material to the finding of probable

cause because, had Butler followed a different course, he and the magistrate may both

have had reason to believe that no kidnapping actually occurred.

Accordingly, because the Complaint adequately alleges facts that call the existence

of probable cause into question, the Court will deny Defendants' Motion to Dismiss as to

Count I.

### b. Malicious Prosecution (Count II)

> To prove malicious prosecution under section 1983, a plaintiff must show
> that: (1) the defendants initiated a criminal proceeding; (2) the criminal
> proceeding ended in plaintiff's favor; (3) the proceeding was initiated
> without probable cause; (4) the defendants acted maliciously or for a
> purpose other than bringing the plaintiff to justice; and (5) the plaintiff
> suffered deprivation of liberty consistent with the concept of seizure as a
> consequence of a legal proceeding.

*Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).[3] "Malicious prosecution

differs from false arrest inasmuch as '[a] claim for false arrest, unlike a claim for

malicious prosecution, covers damages only for the time of detention until the issuance

of process or arraignment, and not more.'" *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir.

---

[3] "The first four elements are the same under Pennsylvania law." *Kossler v. Crisanti*, 564 F.3d 181, 186 n.2 (3d Cir. 2009) (citing *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000)).

2007) (quoting *Montgomery*, 159 F.3d at 126). Malicious prosecution, on the other hand, "permits damages for confinement imposed pursuant to legal process." *Heck*, 512 U.S. at 484.

The Complaint clearly pleads that the Defendant initiated a legal proceeding, that the proceeding terminated in Plaintiffs' favor, and that the Plaintiffs suffered the requisite deprivation of liberty. As the Court found in the immediately preceding section of this Opinion, the Complaint also adequately pleads a lack of probable cause.

Therefore, the only issue remaining is whether Butler acted maliciously or for a purpose other than bringing the Plaintiffs to justice. In this regard, the Complaint alleges that Butler did not conduct an adequate investigation before applying for a fugitive warrant and that, once the Plaintiffs were apprehended, he disregarded exculpatory information that could have otherwise caused them to be released from confinement. While the Complaint does not specify exactly what Butler's intentions were, it at least pleads actions that are inconsistent with a detached and neutral pursuit of justice, insofar as someone committed only to bringing criminals to justice might realize under these facts that the people apprehended were innocent of the crime alleged.

Therefore, the Court will deny Defendants' Motion to Dismiss as to Count II.

### c. Abuse of Process (Count III)

"The tort of 'abuse of process' is defined as the use of legal process against another 'primarily to accomplish a purpose for which it is not designed.'" *Rosen v. Am. Bank of*

*Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993) (quoting Restatement (Second) of Torts, §

682).

> The gravamen of the misconduct for which the liability stated [under this tort] is imposed *is not* the wrongful procurement of legal process or *the wrongful initiation of criminal or civil proceedings*; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.

*Id.* (quoting Restatement (Second) of Torts, § 682, cmt. a) (emphasis added).  To succeed

on an abuse of process claim,

> the plaintiff must show some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . . ; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

*Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008) (quoting *Shiner v. Moriarty*,

706 A.2d 1228, 1236 (Pa. Super. Ct. 1998)) (internal alterations omitted); *see also Jennings*

*v. Shuman*, 567 F.2d 1213, 1216-19 (3d Cir. 1977) (analyzing these principles in context of

section 1983 claim).

Here, Plaintiffs' allegations at most show that Butler did "nothing more than carry out

the process to its authorized conclusion . . . with bad intentions." The use of criminal

process is clearly authorized for purposes of arresting and prosecuting criminal defendants.

Because the Amended Complaint alleges that Butler used the process for that end only, the

"abuse of process" tort does not apply. Under the facts alleged, only malicious prosecution

14

and/or false arrest/imprisonment could theoretically apply. As the Pennsylvania Supreme

Court has characterized the distinction:

> Decisions in this state and in other jurisdictions have drawn a distinction between actions for abuse of legal process and those for malicious prosecution . . . . The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it. . . . "On the other hand, legal process, civil or criminal, may be maliciously used so as to give rise to a cause of action where no object is contemplated other than its proper effect and execution."

*Publix Drug Co. v. Breyer Ice Cream Co.*, 32 A.2d 412, 415 (Pa. 1943) (quoting *Mayer v.*

*Walter*, 64 Pa. 283, 285 (Pa. 1870)).

Therefore, the Court will grant Defendant's Motion to Dismiss as to Count III.

### d. Procedural Due Process (Count IV)

Next, Plaintiffs allege that Officer Butler deprived them of their liberty interests in

their reputations. This occurred when Officer Butler knowingly and intentionally published

false information about them "to the authority issuing the fugitive warrant, the Pennsylvania

State Police (who issued the Amber Alert), Magistrate Judge Christina Hale, the Schuylkill

County District Attorney's office, and various news outlets that reported the felony arrests of

Mr. Tarbox and Ms. Williams and broadcasted to the world that they were kidnappers." (*See*

Am. Compl. at ¶¶ 122, 124.) This caused a further deprivation of their liberty as they were

then "held in confinement for four months." (*Id.* at ¶ 125.)

> To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life,

liberty, or property," and (2) the procedures available to him did not provide "due process of law."

*Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*,

227 F.3d 107, 116 (3d Cir. 2000)).

> The Supreme Court held in *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S. Ct. 507, 27 L. Ed. 2d 515 (1971) that an individual has a protectable interest in reputation. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.* at 437, 91 S. Ct. 507.
>
> Courts have subsequently clarified, however, that reputation alone is not an interest protected by the Due Process Clause. Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest.

*Id.* at 235-36.

"To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly

stigmatizing statement(s): (1) were made publicly and (2) were false." *Id.* at 236.[4]

The Amended Complaint states a claim for a deprivation of Plaintiffs' liberty interests

in their reputations. It alleges that Officer Butler made public statements that the Plaintiffs

kidnapped a child and that, for the reasons discussed at length above, these statements

were false. The statements were also obviously stigmatizing; accusing someone of any

crime is highly damaging to his reputation, especially when that crime involves violence

against children.

---

[4] The Due Process Clause is clearly the province of federal law. However, to the extent that Plaintiffs assert this claim under state law too, (*see* Am. Compl. at p. 22), Pennsylvania courts follow the same federal cases cited herein. *See, e.g., Edinger v. Borough of Portland*, 119 A.3d 1111, 1114 (Pa. Cmmw. Ct. 2015).

The Amended Complaint also adequately pleads the required "plus:" deprivation of some additional right or interest. According to the Amended Complaint, the Plaintiffs were held in prison for approximately four months as a result of Officer's Butler's statements. Freedom from false incarceration is one of the oldest and most important protections of the Due Process Clause; thus, to be imprisoned for a crime that one did not commit clearly constitutes "deprivation of an additional right or interest." Moreover, the Plaintiffs have also alleged that they lost employment and income as a result of the harm to their reputations caused by Officer Butler. While the Defendants argue that the Amended Complaint fails to establish a link between the well-publicized charges of child kidnapping and the loss of Tarbox's job shortly thereafter, such an argument amounts to an unduly narrow and pedantic reading of the Complaint. It is clearly a "reasonable inference . . . that can be drawn from [the] facts" in the Amended Complaint, *see Ethypharm*, 707 F.3d at 231, n.14, that the employment and monetary harms that Plaintiffs suffered stemmed directly from the contemporaneous public accusations that the they were child kidnappers.

Therefore, the Court will deny Defendants' Motion to Dismiss as to Count IV.

### e. Intentional Infliction of Emotional Distress (Count V)

To state a claim for Intentional Infliction of Emotional Distress (IIED), Plaintiffs must show conduct that is

> ". . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Buczek v. First National Bank of Mifflintown*, 366 Pa. Super. 551, 558, 531 A.2d 1122, 1125 (1987). Described another

17

way, "[i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." Restatement (Second) of Torts § 46, comment d; *Daughen v. Fox*, 372 Pa. Super. 405, 412, 539 A.2d 858, 861 (1988).

*Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998). Thus, the Pennsylvania Superior Court has repeatedly held that a cognizable IIED case is generally "one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'" *See, e.g., Small v. Juniata Coll.*, 682 A.2d 350, 355 (Pa. Super. Ct. 1996) (quoting *Jones v. Nussbaum, Rudolph & Sneider*, 368 A.2d 770, 773 (Pa. Super. Ct. 1976)).

Knowingly arresting and prosecuting a person without probable cause may be both legally and morally blameworthy. However, as *Hoy* demonstrates, tortious and even criminal conduct is not enough by itself to invoke IIED liability. Thus, other courts have held that arrests without probable cause, while "certainly deplorable . . . do[] not sink to the level that can be properly called 'atrocious, and utterly intolerable in a civilized society.'" *See Mastromatteo v. Simock*, 866 F. Supp. 853, 860 (E.D. Pa. 1994); *see also Dull v. W. Manchester Twp. Police Dep't*, 604 F. Supp. 2d 739, 755-56 (M.D. Pa. 2009) (similar conclusion).

Likewise, the instant case alleges that Butler disregarded exculpatory information or did not adequately investigate the kidnapping report before initiating criminal process. These allegations are indeed serious. But they do not show the kind of "extreme and

outrageous conduct" meant to be covered in an IIED claim. Instead, they simply allege tortious conduct which is better addressed through the false arrest/imprisonment, malicious prosecution, and/or due process claims already discussed above.

Therefore, the Court will grant Defendants' Motion to Dismiss as to Count V.

### f.   Municipal Liability (Count VI)

Under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. It may, however, be liable on other bases, such as if it failed to train municipal employees to avoid constitutional violations. *See City of Canton v. Harris*, 489 U.S. 378, 380, 109 S. Ct. 1197, 1200, 103 L. Ed. 2d 412 (1989). In such situations, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury" but rather relies on the alternative basis that some failure to train on the part of the municipality caused an employee to inflict the injury, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405, 117 S. Ct. 1382, 1389, 137 L. Ed. 2d 626 (1997). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact'" to "'be properly thought of as a city "policy or custom" that is actionable under §

1983.'" *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1359-60, 179 L. Ed. 2d 417

(2011) (quoting *Canton*, 489 U.S. at 388-89).

As Plaintiffs explain in their Brief, they rely on the allegations that Butler Township

and the BTPD "failed to adequately train and/or educate the Butler Township Police Officers

regarding the proper manner in which they are to investigate allegations of parental

kidnapping" and that "Butler Township and the BTPD have failed to adequately train and/or

educate the Butler Township Police Officers regarding the proper interpretation and

application of the Pennsylvania Crimes Code, specifically but not limited to" the Kidnapping,

Interference with Custody of Children, and Endangering the Welfare of a Child statutes.

(*See* Pls.' Br. in Opp. to Mot. to Dismiss, Doc. 25, at 28 (citing Am. Compl. at ¶¶ 137-38).)

They also argue that the Amended Complaint alleges that Butler Township and the BTPD

followed an unconstitutional policy, practice, and/or custom of condoning and/or acquiescing

in false arrests, false imprisonment, malicious prosecutions, abuses of process, and

violations of Fourth and Fourteenth Amendment rights, and that Butler Township and the

BTPD knew about its failures in training but did nothing to remedy them. (*Id.* at 28-29 (citing

Am. Compl. at ¶¶ 140-46).)

These conclusory allegations are insufficient to invoke *Monell* liability. They merely

plead the elements of the cause of action alleged, which fails to state a claim under

*Twombly* and *Iqbal, supra* section IV. In order to state a claim for *Monell* liability, Plaintiffs

would at least need to allege specific facts showing that an unconstitutional policy or custom

existed, what it consisted of, and how it affected them in their particular case. *Cf. Wood v. Williams*, 568 Fed. App'x 100, 105 (3d Cir. 2014) ("The complaint was also deficient in alleging a claim for failure to train or supervise. The complaint did not allege facts showing any particular or specific policy or custom, or how it allowed the claimed constitutional violation to occur, identifying the policymaker or decisionmaker, or showing prior notice through a pattern of similar constitutional violations."). Alternatively, if Plaintiffs rely on a failure to train theory of liability, they must at least allege specific facts showing that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights," *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999), and that the Defendants were deliberately indifferent to the risk of making the wrong choice. *Cf. Wood*, 568 Fed. App'x at 105-06 (describing failure to adequately plead a failure to train theory).

The complaint as currently written merely recites the elements of the causes of action and then invites the Court to infer that, because Butler allegedly engaged in unconstitutional conduct occurred in the Plaintiffs' case, he must have acted pursuant to an unconstitutional Township custom, policy, or failure to train. This is an invalid inference that essentially asks the Court to impose liability on the Township for the actions of its employees—exactly the type of *respondeat* liability prohibited in *Monell*. The Court cannot accept Plaintiffs' conclusory allegations that municipal liability existed here without specific

facts showing an unconstitutional policy, custom, or failure to train and a connection between that unconstitutionality and Plaintiffs' harm.

Therefore, the Court will grant Defendants' Motion to Dismiss as to Count VI.

### g. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). Qualified immunity serves the dual purpose of holding government officials accountable when they exercise power irresponsibly and protecting officials from "harassment, distraction, and liability when they perform their duties reasonably." *Id.* "[Q]ualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S. Ct. 1284, 1295, 157 L. Ed. 2d 1068 (2004) (Kennedy, J., dissenting)).

In deciding whether to grant qualified immunity, the Court must consider two questions: First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Second, "if a violation

could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

Here, Plaintiffs have alleged an arrest and prosecution that were initiated without probable cause in violation of their Fourth and Fourteenth Amendment rights. Thus, the first *Saucier* prong is satisfied.

"To be 'clearly established' does not mean that 'the very action in question has previously been held unlawful.'" *McGreevy v. Stroup*, 413 F.3d 359, 366 (3d Cir. 2005) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002)). Rather, it need only be true that, in the context of preexisting law, "the unlawfulness of the official's conduct was reasonably and objectively apparent." *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 615, 119 S. Ct. 1692, 1699, 143 L. Ed. 2d 818 (1999)). The "salient question" is "whether the state of law [at the time of the incident] gave [the officials] fair warning that their alleged treatment of [plaintiff] was unconstitutional. *See Hope*, 536 U.S. at 741.

In our case, Plaintiffs' rights to not be arrested without probable cause were indeed clearly established at the time of arrest. But even proceeding to a narrower level of generality, *see Anderson v. Creighton*, 483 U.S. 635, 639-40, 107 S. Ct. 3034, 3038-39, 97 L. Ed. 2d 523 (1987), Pennsylvania's law of kidnapping was clear enough at the time of Plaintiffs' arrest and prosecution to defeat Butler's assertion of qualified immunity under the facts alleged in the Amended Complaint. The Pennsylvania Superior Court has held that

"the special case of custodial interference" is distinguishable from "the general crimes of kidnapping" by, among other things, "the fact the defendant is usually a parent or other relative who is favorably disposed toward the child and does not think of his action as harmful to the child." *Commonwealth v. Barfield*, 768 A.2d 343, 347-48 (Pa. Super. Ct. 2001) (quoting ALI Model Penal Code and Commentaries, Part II § 212.4, comment 2(a)). This is evidenced by the distinction in the Pennsylvania Criminal Code between the general kidnapping statute and the crime of "Interference with Custody of Children," which includes as a defense that "the actor is the child's parent or guardian or other lawful custodian and is not acting contrary to an order entered by a court of competent jurisdiction." 18 Pa. Cons. Stat. Ann. § 2904(b)(3). While kidnapping is a felony of the first degree, *see id.* at § 2901(b), interference with custody of children is a felony of the third degree, 18 Pa. Cons. Stat. Ann. § 2904(c).

As discussed above, the Amended Complaint pleads that evidence existed at the time of arrest that indicated that Plaintiffs could at most be guilty of the lesser offense—and even indicated that they were innocent of that, insofar as section 2904 does not apply to a parent who is not acting contrary to a court order. If these allegations are true, then the Plaintiffs never should have been arrested. Moreover, according to the Amended Complaint, if Butler had done a more thorough job in examining the kidnapping complaint that Long reported to him, he would have soon realized that what was being reported to him was not a

crime under Pennsylvania law, but rather a dispute between noncustodial parents. Thus, the

Amended Complaint adequately alleges violations of clearly established rights.

The Court's qualified immunity discussion is limited by the fact that we are currently

limited only to the allegations in Plaintiffs' Amended Complaint. It is possible that discovery

will uncover information showing that Officer Butler did not act contrary to Plaintiffs' clearly

established rights.[5] However, no such information is available now.

Therefore, the Court will conditionally deny Defendants' assertion of qualified

immunity, with leave to reassert it after the appropriate time.

### h. Political Subdivisions Tort Claims Act

Next, Defendants invoke the immunities provided by Pennsylvania's Political

Subdivisions Tort Claims Act ("PSTCA"). The section on which Defendants rely provides

that a local agency shall be liable for damages only under certain circumstances not present

here. 42 Pa. Cons. Stat. Ann. § 8542(a)-(b).

By its own language, this section only applies to "local agenc[ies]." However,

Plaintiffs' only claim against the Township is a *Monell* claim which is based on federal law

and therefore not subject to immunity under the PSTCA. *See, e.g., Wiehagen v. Borough of

N. Braddock*, 559 A.2d 991, 993 (Pa. Cmmw. Ct. 1989) ("[An argument under section

8542(b) for indemnification] is inapplicable to a § 1983 federal civil rights action. Obviously,

---

[5] For instance, the Court recognizes that a parent can possibly be guilty of kidnapping in certain circumstances. *Cf., e.g., Commonwealth v. Rivera*, 828 A.2d 1094, 1096 (Pa. Super. Ct. 2003). Our holding merely recognizes that, under the facts alleged in the Amended Complaint, those circumstances are not present here.

the Act cannot immunize a municipality against a federal cause of action. A § 1983 action is

not a regular tort action, it addresses the violation of federal civil rights.").

Therefore, the only claims that could possibly be precluded under the PSTCA are the

state-law claims against Officer Butler. These are subject to a different section of the Act,

which provides as follows:

> In any action against a local agency or employee thereof for damages on
> account of an injury caused by the act of the employee in which it is judicially
> determined that the act of the employee caused the injury and that such act
> constituted a crime, actual fraud, actual malice or willful misconduct, the
> provisions of sections 8545 (relating to official liability generally), 8546[6]
> (relating to defense of official immunity), 8548 (relating to indemnity) and
> 8549 (relating to limitation on damages) shall not apply.

42 Pa. Cons. Stat. Ann. § 8550. Other courts have found that "false arrest, false

imprisonment, malicious prosecution, [and] intentional infliction of emotional distress . . . are

intentional torts amounting to 'actual malice' or 'willful misconduct,' and therefore fall within

the ambit of § 8550." *Cooper v. City of Chester*, 810 F. Supp. 618, 626 (E.D. Pa. 1992)

(collecting cases). We agree, for all the reasons stated above. If Officer Butler did indeed

act in violation of the Plaintiffs' clearly established constitutional rights, then, all else being

equal, this would imply that he acted with actual malice or willful misconduct.

---

[6] Defendants appear to claim immunity under section 8546 separately from their general PSTCA
argument. (*See* Defs.' Br. in Supp. of Mot. to Dismiss, Doc. 17, at 26-27.) To the extent 8546 immunity is
intended to constitute a separate basis for relief, it fails for the same reasons discussed with respect to the
rest of the PSTCA.

All of Plaintiffs' claims are thus either federal civil rights causes of action to which the PSTCA does not apply or state-law intentional torts perpetrated by a local government employee which are excluded from immunity under section 8550.

Therefore, the Court will deny Defendants' Motion to Dismiss as to its claim for PSTCA immunity. Unlike the claim for qualified immunity, this denial will not be with leave to reassert, because the immunity raised is inapplicable as a matter of law to Plaintiffs' causes of action.

### i. Punitive Damages

Finally, Defendants challenge Plaintiffs' claims for punitive damages, which Plaintiffs demand in connection with every count.

A "jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640, 75 L. Ed. 2d 632 (1983). The Pennsylvania law applicable to the state claims is substantially the same. *See Hutchison ex. Rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) ("The standard governing the award of punitive damages in Pennsylvania is settled. 'Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.'") (quoting *Field v. Merriam*, 485 A.2d 742, 747 (Pa. 1984)). Because the Plaintiffs have adequately alleged that Officer Butler acted in disregard

of their constitutional rights, the Court is not prepared to say at the pleadings stage that his actions were not "motivated by evil motive or intent" or do not "involve[] reckless or callous indifference" to Plaintiffs' federally protected rights. Whether Officer Butler acted with the requisite mental state to justify punitive damages is inherently a question of fact best decided at trial. At this stage, all that matters is that the Amended Complaint alleges facts which could possibly support the imposition of punitive damages against Officer Butler.

The situation is different for Butler Township. A "municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 2762, 69 L. Ed. 2d 616 (1981). Though the Court has already dismissed Plaintiffs' Municipal Liability claim in its entirety, the Plaintiffs are on notice that the Court finds a punitive damages claim precluded from any Municipal Liability claim that Plaintiffs might bring in a Second Amended Complaint.

### j.   Opportunity to Amend

This Opinion dismissed certain aspects of Plaintiffs' Amended Complaint and left others intact. When dismissing portions of a complaint, "a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

Allowing curative amendments is appropriate here. The Court only dismissed Count VI due to insufficient allegations; accordingly, adding sufficient factual allegations could salvage that claim. And while the Court does not believe that Counts III and V

apply to the facts of this case, it is possible that Plaintiffs will be able to put forth additional allegations showing that they do.

Therefore, all dismissals will be with leave to amend.

## V.   Conclusion

For the reasons discussed above, Defendants' Motion to Dismiss (Doc. 13) is **GRANTED IN PART AND DENIED IN PART**. A separate Order follows.

Robert D. Mariani
United States District Judge

29